Justin Prato Esq, SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-886-0252
Facsimile:  619-241-8309

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI OLIVARES,<br><br>    Plaintiff,<br><br>vs.<br><br>PRO GROUP CORONA, INC. dba KELLER WILLIAMS,<br><br>    Defendant. | Case No.:<br><br>**CLASS COMPLAINT FOR DAMAGES, INCLUDING PUNITIVE DAMAGES, INTEREST AND ATTORNEY'S FEES, AND FOR INJUNCTIVE RELIEF**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991; Violation of California Penal Code § 637.2** |

COMES NOW Plaintiff ELI OLIVARES (hereinafter referred to as "Plaintiff") who alleges as follows:

### JURISDICTIONAL ALLEGATIONS

1.   Plaintiff is, and at all times herein mentioned was, a resident of the County of San Bernadino, State of California.

- 1 -
CLASS Complaint

2. Defendant PRO GROUP CORONA, INC. dba KELLER WILLIAMS ("KELLER" or "Defendant") is a corporation who is doing business in the County of San Bernadino, State of California.

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012). The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

## NATURE OF THE ACTION

5. Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following two classes of persons:

>  A. *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from July 15, 2020 to the present, including up to and through trial.*

B. *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber to whose residential telephone Defendant and/or its agents transmitted one or more telemarketing calls using an artificial or prerecorded voice without prior express written consent from the called party at any time from July 15, 2020 to the present, including up to and through trial.*

6. The TCPA was passed in order to regulate telemarketing by prohibiting, inter alia, phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission. 47 U.S.C. § 227(b)(1)(B).

7. KELLER and/or Home Approvals Direct is engaged in a scheme to sell mortgage services via cold calls to residential phone numbers on the protected federal Do Not Call Registry.

8. Thus, KELLER and/or Home Approvals Direct is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

9. The modus operandi is the same for all the calls in this case, KELLER using an agent acting at the direction of KELLER or employees of KELLER using artificial voice calling to call various numbers in the United States to sell KELLER's services without regard to whether those numbers are on the Do Not Call Registry or not and without any consent to use pre-record calling.

10. KELLER and/or its agents do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

CLASS Complaint

11. These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

12. KELLER has intentionally violated the TCPA in a so-far successful attempt to sell mortgage services for years.

## FACTUAL SUMMARY

13. Defendants made 9 (9) pre-recorded calls to Plaintiff's residential cellular phone number ending in 9448 wherein they tried to pitch real estate services on the following dates and times (Pacific) and using the following Caller ID ("CID") numbers:
- July 15, 2020; 10:12 am; CID 951-355-2235
- July 20, 2020; 12:45 pm; CID 951-355-2236
- August 11, 2020; 09:41 am; CID 951-355-2235
- August 25, 2020; 11:58 am; CID 951-355-2236
- September 30, 2020; 12:52 pm; CID 951-221-5779
- October 21, 2020; 9:24 am; CID 951-221-5779
- October 27, 2020; 3:45 pm; CID 951-221-5779
- November 19, 2020; 3:30 pm; CID 951-221-5779
- May 12, 2022; 06:16 pm; CID 949-652-7597

14. Plaintiff listed his residential cellular phone on the federal "Do Not Call" registry maintained by the Federal Trade Commission from at least 2015 to the present.

15. Plaintiff's cellular number is purely personal and residential and is not used in any way shape or form to operate any business entity or concern.

16. Each of the calls complained of was initiated using an automated telephone dialing system which used a random or sequential number generator to determine the order in which to pick phone numbers from a preproduced list then called using a pre-recorded voice.

CLASS Complaint

17. While each of the calls complained of above used the Caller ID number, they did not transmit Caller ID name information as required by law. 47 C.F.R. § 64.1601(e).

## Call Details and Liability

18. For the first eight calls from July 15, 2020 until November 19, 2020, other than the August 25, 2020 call, the Plaintiff did not answer these calls, but alleges that these calls were made by the Defendant based on the facts below.

19. For the first eight calls from July 15, 2020 until November 19, 2020, all of them used the same exact pre-recorded message which used the name "Ramiro Quezada" and were all left as voice mail recordings.

20. For the August 25, 2020 call, the Plaintiff answered this call and was greeted by the same prerecorded message as were left by all of the previous calls.

21. Finally fed up with dealing with these illegal calls, the Plaintiff called back the 951-355-2236 number to try to determine who was calling him.

22. Plaintiff left a message asking for a call back so he could try to determine who was calling him.

23. Plaintiff does not claim any violations for these calls.

24. On November 19, 2020 at 4:52 pm Plaintiff received a call from 951-355-2236 and answered it.

25. On the call was an "Alex" who discussed real estate services with the Plaintiff.

26. "Alex" then emails Plaintiff to confirm Plaintiff's details and is it discovered that "Alex" is in fact "Alexander Jonas Alvarez" ("Mr. Alvarez").

27. Plaintiff then researched the name "Alexander Jonas Alvarez" and found out that Mr. Alvarez was in fact an employee of the Defendant, KELLER.

28. Furthermore, "Ramiro Quezada" was also to be discovered to be an employee of Defendant, KELLER.

29. On January 27, 2021, Plaintiff formally revoked any permission for KELLER to call him in writing.

30. Despite this Plaintiff received the final call on May 12, 2022 which left a voice message with a prerecorded message from an "Alondra De Haro".

31. After researching the name, Plaintiff discovered that "Alondra De Haro" was in fact an employee of Defendant, KELLER.

32. Plaintiff alleges on information and belief that the numbers beginning with 951-355-223(x) and with the final number changed shows that the entity or person using these numbers bought what is called a "10 block" or "10 pool" [951-355-223(0-9)] to make calls which is ownership of all numbers in a block of 10 with the last digit different.

33. All of the alleged violative calls above were also used the same prerecorded message, and all of those messages confirm to be from employees of the Defendant, KELLER.

34. This shows that all of the calls were made by the same person or entity which Plaintiff alleges is the Defendant or agent of the Defendant.

35. Plaintiff never gave consent to any person from KELLER to call him other than the two calls to discover their identity, which are not alleged as violations in this complaint.

36. Plaintiff had never done any business with any KELLER or any of its agents or employees, even those named in this complaint.

37. Plaintiff never gave consent to any person from KELLER to call him other than the final two calls to discover their identity.

38. Plaintiff had never given any consent for the Defendant to call him.

39. Plaintiff had never done any business with the Defendant.

40. Plaintiff had not given consent to be called regarding any real estate property sales or any other real estate services to any person or on any website.

41. Plaintiff alleges on information and belief that each person he spoke to on any of the calls or texts specified in this complaint were employed by Defendant directly to make telemarketing calls in addition to any other duties they may have.

42. Plaintiff alleges on information and belief that each person he spoke to on any of the calls or texts specified in this complaint were hired by Defendant if not directly employed by Defendant as Defendant's agent to make telemarketing calls in addition to any other duties they may have.

43. Plaintiff alleges on information and belief that each person he spoke to in any of the calls or texts specified in this complaint were employed by Defendant directly to make telemarketing calls in addition to any other duties they may have.

44. Plaintiff alleges on information and belief that each person he spoke to in any of the calls or texts specified in this complaint were hired by Defendant if not directly employed by Defendant as Defendant's agent to make telemarketing calls in addition to any other duties they may have.

45. Plaintiff alleges on information and belief that each person he spoke to in any of the calls or texts specified in this complaint those calls were made by persons who were employed by Defendant directly to make telemarketing calls in addition to any other duties they may have.

46. Plaintiff alleges on information and belief that each person he spoke to in any of the calls or texts specified in this complaint those calls were made by persons hired by Defendant if not directly employed by Defendant as Defendant's agent to make telemarketing calls in addition to any other duties they may have.

47. Plaintiff alleges on information and belief that for all calls alleged in that the employee or agent of Defendant who made the call did so on behalf of the Defendant.

CLASS Complaint

48. Plaintiff alleges on information and belief that for all calls alleged that the employee or agent of Defendant who made the call did not scrub the number against the Do-Not-Call Registry.

49. Plaintiff alleges on information and belief that for all calls alleged that the Defendant's owners, executives and managers knew that the calls were being make to telemarked the services of Defendant.

50. Plaintiff alleges on information and belief that for all calls alleged that the Defendant's owners, executives and managers knew that the telemarketing calls alleged were being made on the behalf of the Defendant.

51. Plaintiff alleges on information and belief that for all calls alleged that the Defendant's owners, executives and managers knew that the calls being made were not scrubbed against the Do-Not-Call Registry.

52. Plaintiff alleges on information and belief that for all calls alleged that the Defendant's owners, executives and managers were willfully ignorant of the actions of their employees and agents who were making the alleged calls on Defendant's behalf if they did not have direct knowledge.

## Actual Harm Allegations

53. Plaintiff has been harmed by the junk calls a complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

54. The Plaintiff alleges that all of the calls were an invasion of his privacy.

55. During at least one of the calls at issue Plaintiff wanted to make an outgoing call at the same time and was not able to do so, being involuntarily disposed of the use of his phone by Defendants' illegal calls.

## CLASS ACTION ALLEGATIONS

56. **Description of the Class**: Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following two sub-classes of persons.

   A. *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from July 15, 2020 to the present, including up to and through trial.*

   B. *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber to whose residential telephone Defendant and/or its agents transmitted one or more telemarketing calls using an artificial or prerecorded voice without prior express written consent from the called party at any time from July 15, 2020 to the present, including up to and through trial.*

57. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

58. Plaintiff reserves the right to modify the Class description and the Class period based on the results of discovery.

59. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant's call records. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

60. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

a. Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

b. Whether Defendant transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

c. Whether Defendant transmitted any calls for telemarketing purposes using prerecorded or artificial voice to residential lines without prior express written consent.

d. Whether the transmission of these calls was done willfully or knowingly by Defendant.

CLASS Complaint

e. Whether agency relationships giving rise to TCPA liability exist amongst and between Defendant and its agents

61. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since Defendant has repeatedly called the Class to sell their financial products.

62. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with experience in handling complex litigation who has been previously certified as class counsel. Plaintiff and class counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor class counsel have any interests adverse to those of the Class.

63. **Superiority of a Class Action**: Plaintiff and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not

most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

64. Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: TCPA VIOLATION

### CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY
### (On Behalf of the Plaintiff Class]

65. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

66. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

67. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

68. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

69. Defendants have called Plaintiff's residential telephone line for solicitation purposes during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid

of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

70. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the national do-not-call registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both. If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## SECOND CAUSE OF ACTION: TCPA VIOLATION TELEMARKETING CALL TO RESIDENTIAL LINE USING PRERECORDED OR ARTIFICAL VOICE
**(On Behalf of the Plaintiff Class)**

71. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

72. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

73. Subdivision (b) (1) (B) of Section 227 of Title 47 of the United States Code makes it unlawful for any person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the Commission under paragraph (2) (B);"

74. Defendants have called Plaintiff's residential telephone line, using an artificial or prerecorded voice to deliver a message, without Plaintiff's express permission during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made for any emergency purpose, nor were these calls exempt under subdivisions (a) and/or (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

75. Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of 47 U.S.C. §227 (b) (1) (B). Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both. If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);
2. For an award of $1,500.00 for each such violation found to have been willful;
3. For injunctive relief pursuant to 47 U.S.C. 227(c)(5)(A);

On the SECOND CAUSE OF ACTION:

4. For an award of $500.00 for each violation of 47 U.S.C. § 227(b);

CLASS Complaint

5. For an award of $1,500.00 for each such violation found to have been willful;

6. For injunctive relief pursuant to 47 U.S.C. 227(b);

On ALL CAUSES OF ACTION:

7. For attorney's fees pursuant to all applicable federal and state statutes;

8. For costs of suit herein incurred; and

9. For such further relief as the Court deems proper.

DATED: 7/15/2024              **PRATO & REICHMAN, APC**

                                                  __/s/ Justin Prato Esq._____
By: Justin Prato Esq..
**Prato & Reichman, APC**
Attorneys for Plaintiff